444 A.2d 1194

**COMMONWEALTH of Pennsylvania**

v.

**Bruce M. BUFFINGTON, Appellant.**

Superior Court of Pennsylvania.

Argued March 24, 1981.

Filed April 23, 1982.

Petition for Allowance of Appeal Denied Aug. 20, 1982.

Robert E. Campbell, Gettysburg, for appellant.

Robert G. Teeter, Assistant District Attorney, Gettysburg, submitted a brief on behalf of Commonwealth, appellee.

Before PRICE, WIEAND and LIPEZ, JJ.

PRICE, Judge:

This appeal arises out of an automobile accident which occurred on May 16, 1979, in the village of Brushtown, Adams County. Mae R. Lloyd was operating her automobile in a westerly direction on Route 116. The weather was clear and dry. Appellant's pickup truck crossed the center line of the highway from the oncoming lane of traffic and crashed head-on with her car. The impact of this violent collision jerked Mrs. Lloyd's car over the berm of the road onto the front porch of an adjacent home. Appellant's truck careened onto its right side facing west in the eastbound lane. As a result of the collision, Mrs. Lloyd was killed.

On November 30, 1979, appellant was tried before a jury in the Court of Common Pleas of Adams County on a charge of homicide by vehicle.[1] A mistrial was declared, however, when a police officer stated on direct examination that he had detected a trace of alcohol on appellant's breath immediately after the crash. Thereafter, appellant filed a motion to dismiss the charge on double jeopardy grounds because of prosecutorial misconduct. This motion was denied and an immediate appeal was taken to this court.[2] For the reasons stated herein, we affirm the trial court's order denying appellant's motion for discharge.

At trial, the Commonwealth called as its expert witness Dennis J. Hagerman, the investigating officer present at the accident scene. During the course of Hagerman's direct examination, defense counsel repeatedly objected that no

---

1. 75 Pa.C.S.A. § 3732 (1977). Section 3732 provides:
   Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

2. An order denying a pretrial motion to dismiss on double jeopardy grounds is immediately appealable. *Commonwealth v. Starks*, 490 Pa. 336, 416 A.2d 498 (1980); *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).

foundation had been laid for the officer's proffered testimony concerning the point of impact. These objections were sustained until the trial court finally granted a recess in order for the prosecution to organize its case-in-chief.[3] When the trial had resumed and the proper foundational questions had been asked, the trial court ruled, at defense counsel's behest, that the investigating officer could not render an expert opinion as to the cause of the collision. Immediately after this ruling, however, testimony regarding the point of impact was admitted. The prosecutor then asked Officer Hagerman about his observations of appellant following the crash:

Q. [ASSISTANT DISTRICT ATTORNEY] Did you observe Mr. Buffington on the scene?

A. [OFFICER HAGERMAN] Yes, sir, I did.

. . . .

Q. Did you notice anything about his demeanor at that time?

A. When I talked to the man when I first observed him he was at the scene of the accident in the middle of the roadway. He was bleeding from the scalp area. He appeared confused, injured. There was an odor of alcoholic beverages about his person.

(N.T. 48–49). The defense then moved for a mistrial on the ground that the officer's reference to an odor of alcohol without other proof of intoxication gave rise to an impermissible inference that appellant was under the influence and unfit to drive at the time of the accident. Following a side

---

**3.** The trial judge stated:

I just want to tell you, Mr. Teeter, that if you are trying to get this witness to express an opinion, there are several things that you have to do in order to qualify him to express an opinion. It's becoming a little disconcerting with this unorganized way that this testimony is continuing. You haven't gone into his background. You haven't really developed what he's seeing, the fact about which he's basing any opinion even when not asked. We will sustain the last objection and order the jury to disregard that particular part of it but I'm just telling you that if you want to take a few minutes to get organized, perhaps you should do so but this is not coming in the way it properly should come in. (N.T. 24).

bar conference, the trial judge admitted that, although intoxication is a proper circumstance from which recklessness or carelessness of a driver may be inferred,[4] the mere fact that appellant's breath smelled of alcohol did not prove intoxication, and, therefore, such evidence, standing alone, was inadmissible because highly prejudicial. *See, e.g., Fisher v. Dye*, 386 Pa. 141, 125 A.2d 472 (1956); *Cusatis v. Reichert*, 267 Pa. Superior Ct. 247, 406 A.2d 787 (1979); *Schwarzbach v. Dunn*, 252 Pa. Superior Ct. 454, 381 A.2d 1295 (1977); *Selby v. Brown*, 250 Pa. Superior Ct. 134, 378 A.2d 862 (1977). Accordingly, the trial judge granted appellant's motion for a mistrial. Later, after the jury had been dismissed, Officer Hagerman stated in an unrecorded discussion with defense counsel that he had been specifically instructed by the prosecution to mention the odor of intoxicating liquor on appellant's breath.[5]

In challenging the propriety of the trial court's order dismissing his pretrial motion to dismiss, appellant argues that the prosecutor's conduct amounted to overreaching forbidden by the double jeopardy clause and, therefore, that his reprosecution must be barred. Appellant specifically contends that the events described above prove that, by deliberately infecting the proceedings, the prosecutor sought to trigger the declaration of a mistrial in order to secure a more favorable opportunity to convict or to prejudice appellant's prospects for an acquittal.[6] *See Commonwealth v. Sample*, 493 Pa. 347, 426 A.2d 582 (1981); *Commonwealth v.*

---

4. In order for the jury to find appellant guilty of homicide by vehicle, the trial judge was convinced that it must find his actions grossly negligent. *See Commonwealth v. Nay*, 281 Pa. Superior Ct. 226, 421 A.2d 1231 (1980); *Commonwealth v. Barone*, 276 Pa. Superior Ct. 282, 419 A.2d 457 (1980). *But see Commonwealth v. Spurgeon*, 285 Pa. Superior Ct. 563, 428 A.2d 189 (1981); *Commonwealth v. Hartzell*, 282 Pa. Superior Ct. 549, 423 A.2d 381 (1980).

5. The Commonwealth does not dispute this fact either now on appeal or in its answer to appellant's pretrial application to dismiss the charge.

6. In the instant case, there is no question whether Officer Hagerman's objectionable testimony should be imputed to the Commonwealth. *See* note 5 and accompanying text *supra*. *But see Common-*

*Starks*, 490 Pa. 336, 416 A.2d 498 (1980). Appellant buttresses his argument by citing the fact that, before Officer Hagerman committed the offending reference, the Commonwealth's case was not progressing favorably: the trial judge had continuously sustained defense counsel's objections to the prosecutor's attempts to elicit opinion evidence regarding the place of impact and even felt constrained to recess the proceedings to enable the prosecutor to reorganize his direct examination.

In *Commonwealth v. Clark*, 287 Pa. Superior Ct. 380, 430 A.2d 655 (1981), we sought to dispel the uncertainty surrounding the standard to be applied in cases involving prosecutorial misconduct. That case set forth several factors to be used in determining the existence of bad faith.[7] Mindful of those factors, we direct our attention to the instant record. *See Commonwealth v. Potter*, 478 Pa. 251, 268, 386 A.2d 918, 926 (1978) (Pomeroy, J., Opinion in Support of Affirmance).

After the officer's reference to the smell of alcohol on appellant's breath, the following discussion occurred out of the jury's presence:

*wealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980); *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); *Commonwealth v. Palazzo*, 275 Pa. Superior Ct. 135, 418 A.2d 649 (1980); *Commonwealth v. Meekins*, 266 Pa. Superior Ct. 157, 403 A.2d 591 (1979).

7. As this court said in *Clark*, the following circumstances are relevant in gauging a prosecutor's conduct:

(1) the absence of any actions undertaken by the prosecutor to preserve the trial and to enhance the defendant's prospects for a fair trial after the misconduct occurred, (2) the absence of either abundant or convincing evidence of the defendant's guilt, so that the prosecutor's misconduct might reasonably be perceived as an attempt to rescue an inadequate prosecution, (3) the absence of misconduct causing serious and incurable prejudice to the defendant, (4) the absence of any neutral explanations, including inexperience, trial strategy, or inadvertence on the part of the government, to show that it did not, in fact, act purposely, (5) observations of the trial judge concerning the prosecutor's motives, and (6) defiance by the prosecutor of any direct order or clear admonition by the trial court to refrain from specific conduct prejudicing the defendant's prospects for acquittal.

*Commonwealth v. Clark*, 287 Pa. Superior Ct. at 392, 430 A.2d at 661.

[THE COURT]: Is there any evidence that the Defendant was under the influence of alcoholic beverages?

[THE ASSISTANT DISTRICT ATTORNEY]: A blood test was refused in the hospital. The important aspect of this is that there is no explanation for this accident. I think it is within the province of the jury to hear this evidence and to determine—well, perhaps he fell asleep. Obviously the jury will make some determination in its mind as to how the accident occurred. That's the Commonwealth's position. This is something the jury should know. *It's a fact of the case.*

[THE COURT]: When are you planning on trying this case again. Mr. Teeter, one of the elements that is involved in a homicide by vehicle is the element of criminal negligence. In civil cases involving the question of negligence it has been ruled that the mention of alcoholic beverages is inflammatory requiring a new trial or a mistrial in the absence of testimony that would indicate that the person was under the influence. If that is true in a civil case—I haven't seen anything in a criminal case—but since the issue is the same that is negligence. I'm afraid [sic] your witness has committed an error which I just can't overlook.

[THE ASSISTANT DISTRICT ATTORNEY]: I just feel that it's something that the jury has a right to know *because it is a fact of the case.*

[THE COURT]: Do you have any authority that the civil rule does not also apply to a criminal action such as this?

[THE ASSISTANT DISTRICT ATTORNEY]: No, Your Honor.

[THE COURT]: I'll give you five minutes to come up with authority.

(N.T. 49–50) (emphasis added). When the trial resumed, the assistant district attorney was unable to produce the requested research. The trial judge, therefore, granted the defense motion for a mistrial.

At first blush, it is true that the objective circumstances of the court proceeding indicate that the prosecutor's case

was going badly. To be sure, appellant did succeed in excluding the investigating officer's expert testimony concerning the point of impact. As we have already noted, however, this critical evidence, showing that appellant's vehicle crossed the center line and was in the opposite lane of travel when the crash occurred, was ruled admissible *just prior* to the officer's reference to the odor of alcohol. Given this state of the record, we disagree with appellant's contention that the prosecutor's conduct should be perceived as an attempt to rescue an inadequate prosecution.

■ It is also fair to say in assessing appellant's charge of prosecutorial overreaching that the evidence in this case, considered in its totality, may reveal more than the "hint of intoxication" condemned as prejudicial in *Fisher v. Dye, supra,* and its progeny.[8] Our purpose in stating such is not to show that the trial court abused its discretionary power to declare a mistrial since that issue is not before us. Rather, we mean only to reiterate our finding in *Clark, supra,* that

8. Without question, the mere fact of consuming intoxicating liquor is inadmissible to prove unfitness to drive. "[I]f in addition to the drinking, [however,] facts are shown from which a conclusion reasonably follows that the driver was under the influence . . ., all the evidence . . . [is] admissible . . . to determine whether or not the drinking was wholly or partly the cause of an accident." *Commonwealth v. Cave,* 219 Pa. Superior Ct. 512, 515, 281 A.2d 733, 734 (1971). In *Cave,* for example, this court held that where there is evidence establishing a causal connection between a driver's drinking and a subsequent accident, the fact of drinking has rational probative value on the issue of the driver's alleged intoxicated state outweighing any danger that a jury may be unduly prejudiced. ·

Turning to the instant case, the circumstances indicate more than just drinking and in the occurrence of a fatal accident with nothing to connect the two. Under optimal driving conditions, appellant's truck crossed the center line of a highway and collided head-on with another automobile. *Immediately afterwards,* the investigating officer at the accident scene found appellant in the middle of the highway, confused and with the odor of alcohol on his breath. Although it is by no means clear-cut, these facts arguably reveal a chain of events, leading from appellant's drinking (as evidenced by the odor on his breath) to the accident, from which a reasonable inference could be drawn that appellant's ability to safely operate his truck was impaired. *Cf. Commonwealth v. Reeves,* 237 Pa. Superior Ct. 443, 352 A.2d 167 (1975) (defendant's conviction of driving under the influence of intoxicating liquor was affirmed on the basis of facts virtually identical to those involved in the present case).

the absence of prejudice to a defendant at least *substantially certain to result in a mistrial* negates any inference of bad faith on the part of the prosecutor. *Commonwealth v. Clark*, 287 Pa. Superior Ct. at 397, 430 A.2d at 664.

■ Indeed, after reviewing the transcript of the proceedings, we find that any impropriety that occurred was attributable to the prosecutor's belief that the odor of alcohol, when joined with other facts of evidence in the case, was relevant in determining whether appellant's drinking contributed to the fatal accident. *See* note 8 *supra.* The prosecutor argued that, even if appellant was not intoxicated, the jury could reasonably infer that he was deprived of that degree of control and clarity of intellect which he would ordinarily possess. In light of this circumstance, it must be concluded that the prosecutor's attempt to elicit testimony concerning the odor of alcohol on appellant's breath had a basis in trial strategy and was not calculated to create an impression of unfitness to drive through innuendo. *See generally Commonwealth v. Clark, supra.*

■ Finally, it is important to note that the trial court itself was satisfied that the events which led to the mistrial failed to disclose any deliberate prosecutorial misconduct.[9] *See Commonwealth v. Clark, supra.* Determining the motives of the prosecutor is analogous to assessing the credibility of the witnesses in a nonjury trial. *Commonwealth v. Wright*, 439 Pa. 198, 266 A.2d 651 (1970). "The trial judge who is on the scene and who has observed the individuals and the events is in a better position to decide this question than are we who only have a dry record from which to work." *Id.*, 439 Pa. at 204, 266 A.2d at 654–55 (citation omitted). Therefore, unless the record supports a finding of overreaching, we give great weight to a trial judge's decision to permit a defendant's reprosecution. *See Commonwealth v. Clark, supra.* As already indicated, we find that the instant record fully supports the conclusion of the trial court.

9. In pertinent part, the trial court stated that its "firm belief [was] that the Assistant District Attorney sincerely believed [his conduct] was proper." Slip op. at 3.

Admittedly, the portion of Officer Hagerman's testimony that caused the declaration of a mistrial was given pursuant to the instructions of the prosecutor. This is not a case, however, where the prosecutor's conduct was so abhorent as to constitute overreaching as proscribed by the double jeopardy clause. Criminal adjudication necessarily demands that the prosecutor assume an aggressive stance, and it is only when he has engaged in intentional misconduct designed to prejudice the jury or force the defense to move for a mistrial that society's interest in punishing criminals must give way to a discharge of the accused.

The trial court's order denying appellant's motion for discharge is affirmed.

WIEAND and LIPEZ, JJ., concur in the result.